Elliot Gale (Bar #263326)
egale@gajplaw.com
Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Joshua Aguilar

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Joshua Aguilar<br><br>            Plaintiff,<br><br>     v.<br><br>Bank of America, N.A.<br><br>            Defendant. | CASE NO.  2:20-cv-02326<br><br>PLAINTIFF'S COMPLAINT FOR DAMAGES:<br><br>1. Violation of the Rosenthal Fair Debt Collection Practices Act<br>2. Intrusion Upon Seclusion<br>3. Violation of the Telephone Consumer Protection Act |

COMES NOW Plaintiff Joshua Aguilar, an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. Plaintiff brings this action against Bank of America, N.A. in response to receiving approximately four hundred and fifty (450) telephone calls from Bank of America, N.A. over the course of three months.  These calls continued despite Bank of America, N.A. receiving twenty-23 (23) separate certified notices demanding the calls stop and informing Bank of America, N.A. that Plaintiff was represented by counsel.  Each notice sent attached to it the previous notices sent.

1

2. This is an action for damages brought by an individual consumer for Defendant's violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §1788, *et seq.* (hereinafter "Rosenthal Act"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices, intrusion upon seclusion, which California has adopted from §652B of the Restatement (Second) of Torts, and violation of the Telephone Consumer Protection Act 47 U.S.C. §227, *et seq.* (hereinafter "TCPA"), which prohibits the use of automated dialing equipment when making calls to consumers.

3. Plaintiff also seeks exemplary damages under Cal. Civ. Code § 3294 as Defendant received no less than twenty-three certified notices from Plaintiff's counsel that Plaintiff was represented by an attorney, that his consent to be contacted was revoked, and each notice attached to it every single previous notice sent. Defendant therefore received more than 200 notices from Plaintiff that were all ignored.

4. Cal. Civ. Code § 3294 allows for a finding of oppression, malice, or fraud given the high number of calls and the number of notices that were received by Bank of America, N.A. and intentionally ignored.

5. Plaintiff brings this action against Defendant Bank of America, N.A. (hereinafter "Defendant" or "Bank of America") for its abusive and outrageous conduct in connection with debt collection activity.

6. In Calif. Civil Code § 1788.1(a)-(b), the California Legislature made the following findings and purpose in creating the Rosenthal Act:

> (a)(1) The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.

(2) There is need to ensure that debt collectors and debtors exercise their responsibilities to another with fairness and honesty and due regard or the rights of the other.

(b) It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts of practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.

7. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

8. The TCPA was designed to prevent calls like the ones described herein, and to protect the privacy of citizens like Plaintiff, and by enacting the TCPA, Congress intended to give consumers a choice as to how corporate entities may contact them and to prevent the nuisance associated with automated or prerecorded calls.

## JURISDICTION & VENUE

9. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 47 U.S.C. § 227.

10. This venue is proper pursuant to 28 U.S.C. §1391(b).

## GENERAL ALLEGATIONS

11. Plaintiff Joshua Aguilar (hereinafter "Plaintiff") is an individual residing in the state of California and is a "debtor" as defined by Cal. Civ. Code §1788.2(g).

12. At all relevant times herein, Bank of America was a company engaged, by the use of mail, email, and telephone, in the business of collecting a debt from Plaintiff, and a "consumer debt," as defined by Cal. Civ. Code §1788.2(f).

13. At all relevant times, Defendant acted as a "debt collector" within the meaning of Cal. Civ. Code §1788.2(c)

14. Plaintiff opened an unsecured credit account with Defendant in early 2016.

15. The account Plaintiff opened with Defendant was primarily for personal, family or household purposes and is therefore a "debt" as that terms is defined by the Calif. Civil Code § 1788.2(d) of the Rosenthal Act.

16. Defendant has been attempting to collect on a debt that originated from monetary credit that was extended primarily for personal, family, or household purposes, and was therefore a "consumer credit transaction" within the meaning of Calif. Civil Code § 1788.2(3) of the Rosenthal Act.

17. Because Plaintiff, a natural person allegedly obligated to pay money to Defendant rising from what Plaintiff is informed and believes was a consumer credit transaction, the money allegedly owed was a "consumer debt" within the meaning of California Civil Code § 1788.2(f) of the Rosenthal Act.

18. Plaintiff is informed and believes that Defendant is one who regularly collects or attempts to collect debts on behalf of themselves, and is therefore a "debt collector" within the meaning of the Calif. Civil Code § 1788.2(c) of the Rosenthal Act, and thereby engages in "debt collection" within the meaning of the California Civil Code § 1788.2(b) of the Rosenthal Act, and is also therefore a "person" within the meaning of California Civil Code § 1788.2(g) of the Rosenthal Act.

19. Plaintiff's account was an unsecured credit card and Plaintiff began making payments on the account shortly after it was opened.

20. Plaintiff was making payments on the account for several years before he became financially unable to keep up with the monthly payments.

21. Defendant began contacting Plaintiff late July or early August of 2019 to inquire about the status of the account and to collect on the payments that were no longer being made.

22. Plaintiff retained counsel to assist in dealing with Defendant's debt and to seek some type of financial relief.

23. Counsel for Plaintiff sent Defendant an initial letter confirming representation of Plaintiff and informing Defendant that it was to no longer contact

Plaintiff directly and that all calls/letters/collection efforts were to no longer be directed at Plaintiff.

24. The contents of the letter also informed Defendant that Plaintiff was withdrawing his consent to be contacted on his cellular telephone if any such consent had ever been previously given.

25. Counsel for Plaintiff sent the letter of representation to Defendant through certified mail on or about September 27, 2019 and believes that Defendant received the letter on September 30, 2019.

26. Plaintiff informed Defendant that he was revoking his consent to be called on his cellular telephone in September of 2019.

27. Defendant continued to contact Plaintiff even after it had received Plaintiff's September 27, 2019 letter.

28. A second notice was sent to Defendant, also through certified mail, on December 3, 2019.  The notice reminded Bank of America that Plaintiff was represented by counsel and that he also was revoking his consent to be contacted by an auto dialer.  Bank of America received the second notice shortly after it was mailed.

29. Despite two notices being received by Bank of America the calls continued. Plaintiff grew increasingly frustrated and annoyed at the frequency of the calls.

30. In response to Plaintiff's growing frustration, a third notice was sent to Bank of America on December 17, 2019 and received shortly thereafter.  To avoid any potential misunderstanding, Plaintiff's December 17 notice listed, in bold, that it was the third notice that was being provided to Bank of America.

31. Plaintiff, however, continued to receive calls from Bank of America.

32. In addition to the calls that were received on his cellular telephone, Plaintiff also was receiving collecting notices and payment demands from Bank of America after it was repeatedly made aware of the fact that Plaintiff was represented by an attorney.

33. These collection notices and payment demands were not account statements.

34. A fourth notice was sent on January 3, 2020, also through certified mail, and was received by Bank of America shortly thereafter. The fourth notice also contained previous copies of the prior three notices that were sent and received by Bank of America.

35. Unfortunately for Plaintiff, the first four notices did absolutely nothing to stop the auto dialed calls from Bank of America and a fifth notice was sent, through certified mail, and included copies of all prior notices. The fifth notice was sent on January 10, 2020 and received shortly thereafter.

36. Undeterred, Bank of America continued to call Plaintiff and ignore the certified notices that were provided by Plaintiff and Counsel regarding his representation and revocation of consent to be contacted on his cellular telephone.

37. Instead, Bank of America was determined to extract payment from Plaintiff despite having knowledge that Plaintiff was represented by Counsel and had revoked his consent to be contacted on his cellular telephone.

38. Plaintiff and his Counsel continued to provide notice, through certified mailings, to Bank of America regarding Plaintiff's representation.

39. In addition, Plaintiff's counsel attempted to contact Bank of America to speak with an account representative to discuss the notices that were being sent and the calls that were being placed to Plaintiff's cellular telephone – however Plaintiff's counsel was unable to speak with anyone at Bank of America.

40. Ultimately Bank of America received twenty-three separate certified notices yet continued to contact Plaintiff. Each of the notices that was sent to Bank of America contained the prior notices.

41. These notices were sent, certified, to Bank of America every few days.

42. Each and every notice was received by Bank of America.

43. Despite the twenty-third notice including nearly forty pages of prior notices, Bank of America continued to contact Plaintiff to demand payment on the account and used an auto dialer to initiate such contact.

44. Between approximately September 30, 2019 – present Bank of America contacted Plaintiff on at least 450 (four hundred and fifty) separate occasions despite receiving ample notice that Plaintiff was represented by counsel and that he was revoking his consent to be contacted on his cellular telephone.

45. The actual call volume may be much higher as the number of calls placed by Bank of America to Plaintiff have overwhelmed Plaintiff and caused him to experience a significant amount of anxiety and stress.

46. Defendant would often call Plaintiff numerous times each day demanding payment on the account.

47. Defendant would use an automatic dialing machine when placing the calls to Plaintiff.

48. Plaintiff was contacted repeatedly regarding non-payment of the debt owed to Defendant despite Defendant being notified, on twenty-three separate occasions, that Plaintiff had retained counsel to deal specifically with the debt owed to Defendant and that Plaintiff revoked consent to be contacted on his cellular telephone.

49. Defendant's calls were frequent in nature and continued despite receiving written confirmation that Plaintiff was represented by an attorney and that all calls to Plaintiff's cellular telephone were to stop.

50. Defendant intentionally ignored Plaintiff's letters of representation of revocation of consent and willfully attempted to coerce Plaintiff into making payment on his account by bombarding his cellular telephone with auto dialed calls.

51. Bank of America intended to frustrate and annoy Plaintiff at all time of the day, regardless of where Plaintiff was, in an attempt to have his make payments on the account.

52. Despite receiving twenty-three written notices regarding Plaintiff's representation by counsel and revocation of his consent to be contacted on his cellular telephone Defendant continued to call and contact Plaintiff daily regarding his account with Defendant.

## FIRST CAUSE OF ACTION
(Violation of the Rosenthal Act)
(Cal. Civ. Code §§ 1788-1788.32)
(Against Defendant Bank of America)

53. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

54. Plaintiff provided written notice on twenty-three separate occasions that he was represented by sending Defendant a letter with the name, address, and contact information of his attorney and informed Defendant that he was represented.

55. Plaintiff's counsel also attempted to speak with Bank of America but was unable to receive appropriate assistance in response to the call.

56. Defendant continued to call and attempt to make contact with Plaintiff despite receiving notice of representation and being informed that Plaintiff had retained counsel in an effort to deal with the debt that was owed to Defendant.

57. The calls and communications made by Defendant to Plaintiff were not related to statements of Plaintiff's account and were attempts to collect a debt.

58. Plaintiff received over 450 calls and from Defendant beginning approximately September 30, 2019 - present.

59. In addition to the calls placed to Plaintiff after Bank of America knew Plaintiff was represented by an attorney, Plaintiff also received various collection notices and payment demands from Bank of America.

60. These payment demands were not monthly account statements and were sent to Plaintiff in an attempt to collect on the account despite Bank of America being aware that Plaintiff was represented by an attorney.

61. The mailing of these various collection notices and payment demands continued well after Bank of America received the various notices of representation.

62. Defendant violated Cal. Civ. Code §1788.14 by contacting Plaintiff after receiving noticed that Plaintiff had retained an attorney.

**SECOND CAUSE OF ACTION**
(Intrusion Upon Seclusion)
(Against Defendant Bank of America)

63. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as set forth herein.

64. The California legislature explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Rosenthal Fair Debt Collection Practices Act and incorporating most of the Federal Act's provisions into the Rosenthal Act.

65. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

66. Bank of America intentionally interfered, physically or otherwise, with the solitude and seclusion of Plaintiff, namely by engaging in unlawful and intrusive communications.

67. Bank of America intentionally caused harm to Plaintiff's emotional well-being by engaging in highly offensive conduct in the course of collecting its debt, and thereby invaded and intruded upon Plaintiff's rights to privacy.

68. Plaintiff has a reasonable expectation of privacy in his solitude, seclusion, and/or private concerns and affairs.

69. These intrusions and invasions against Plaintiff by Bank of America occurred in a way that would be highly offensive to a reasonable person in that position.

70. Bank of America received twenty-three separate notices stating that it was no longer to contact Plaintiff as he was represented by counsel and revoked his consent to be contacted on his cellular telephone.

71. As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Bank of America.

**Cal. Civ. Code § 3294**

72. According to publicly available filings Bank of America had total revenues in 2019 of approximately one hundred and thirteen billion dollars and net income of approximately twenty-seven billion dollars.

73. Market Capitalization is a measurement of business value based on share price and number of shares outstanding. It generally represents the market's view of a company stock value.

74. According to publicly available filings as of March 10, 2020 Bank of America has a market capitalization of 198.84 billion dollars.

75. Bank of America also acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to exemplary damages in an amount according to proof and a finder of fact at trial.

76. Bank of America had actual knowledge that it continued to violate both state and federal collection laws as it received twenty-three separate notices regarding representation of Plaintiff by an attorney.

77. These calls were done with knowledge that Plaintiff was represented by counsel and could not be communicating directly with Plaintiff, let alone using an automated telephone dialing system.

78. Given Defendant's knowledge of Plaintiff's representation and revocation of consent, these calls were an attempt to collect a debt in an illegal manner with a conscious disregard for Plaintiff's rights under both the Rosenthal Fair Debt Collection Practices Act and the Telephone Consumer Protection Act.

79. Given Defendant's knowledge of Plaintiff's representation and revocation of consent, Defendant's illegal communications were done to intentionally subject Plaintiff to the unjust hardship of receiving at least four hundred and fifty calls.

80. The sheer volume of calls was intentionally designed to exhaust Plaintiff into paying Defendant.

### THIRD CAUSE OF ACTION
(Violation of the TCPA)
(47 USC § 227)
(Against Defendant Bank of America Bank)

81. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

82. Since at least early August of 2019 Defendant started calling Plaintiff's cellular telephone requesting that payment be made on the accounts Plaintiff held with Defendant.

83. Defendant was informed that Plaintiff revoked his consent to be contacted by Defendant in September of 2019.

84. Defendant called Plaintiff at least 450 (four hundred and fifty) times since Plaintiff withdrew his consent to be contacted by an automatic dialing machine.

85. Defendant was notified on twenty-three separate instances that Plaintiff had revoked his consent to be contacted on his cellular telephone by an automatic dialing machine, however, despite being informed on multiple occasions of the revocation, Bank of America continued place calls to Plaintiff's cellular telephone without his

consent and with complete disregard to any of the twenty-three prior notices that were received by Bank of America.

86. Defendant would contact Plaintiff nearly daily regarding payment on the accounts.

87. Defendant placed the above cited calls using an artificial or prerecorded voice to deliver the collection messages without Plaintiff's prior express consent.

88. All calls placed by Defendant to Plaintiff utilized an "automatic telephone dialing system" as defined by 47 U.S.C. §227(a)(1).

89. These calls were made to Plaintiff's cellular telephone and were not calls for an emergency purposed as defined by 47 U.S.C. §227(b)(1)(B).

90. Plaintiff expressly revoked any consent that may have previously been given to Defendant to be contacted by an automatic dialing machine in September of 2019 and ultimately sent twenty-three certified notices to Defendant regarding his revocation of consent.

91. Overall Plaintiff was contacted at least 450 (four hundred and fifty) times by Defendant on his cellular phone.

92. These telephone calls by Defendant, or its agent, violated 47 U.S.C. §227(b)(1)(A)(iii).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

    **a.** An award of actual, statutory, and punitive damages.

    **b.** An award of actual damages pursuant to California Civil Code §1788.30(a), as will be proven at trial, which are cumulative and in addition to all other remedies provided for in any other cause of action pursuant to California Civil Code §1788.32.

    **c.** An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b), which are cumulative and in addition to all other remedies provided for in California Civil Code §1788.32; and

  **d.** An award of costs of litigation and reasonable attorney's fees pursuant to Cal. Civ. Code §1788.30(c).

  **e.** An award of exemplary damages pursuant to Cal. Civ. Code § 3294(a) of $6,750,000.00 to deter future malfeasance.

  **f.** An award of statutory damages of at least $675,000 and or $1,500.00 pursuant to 47 U.S.C. §227(b)(3)(C) for each and every violation.

  **g.** Pursuant to 47 U.S.C. §227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

           **Gale, Angelo, Johnson, & Pruett, P.C.**

Dated: March 11, 2020    By: */s/ Joe Angelo*
              Joe Angelo
              Elliot Gale
              Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of this matter by jury.

           **Gale, Angelo, Johnson, & Pruett, P.C.**

Dated: March 11, 2020      */s/ Joe Angelo*
              Joe Angelo
              Elliot Gale
              Attorneys for Plaintiff